WESTERN UNION TELEGRAPH COMPANY v. JOHN H. DAVIS.

Delivered May 1, 1897.

Telegraphs—Delay in Transmission—Liability.

A telegraph company which receives a telegram announcing the death of the addressee's father, under an agreement to promptly transmit it to a specified place and there promptly deliver it to a telephone company for transmission and delivery, is liable if it fails to use reasonable diligence in notifying the telephone company, on delivering the message, that extra charges for delivery have been guaranteed, and in consequence thereof the message is not delivered in time to permit the addressee to attend the funeral.

APPEAL from Parker. Tried below before Hon. J. W. PATTERSON.

*Stanley, Spoonts & Thompson*, for appellant.

*Harry W. Kuteman*, for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by John H. Davis, appellee, on February 5, 1895, to recover from appellant company damages for mental suffering and costs of telegram, in the sum of $1804.65, resulting to him by reason of appellant's negligence in failing to promptly deliver to him at Veal Station, Parker County, Texas, the following message:

"SAN ANTONIO, TEXAS, Nov. 19, 1894.

"To John H. Davis, Veal Station, Texas.

"Papa died suddenly tonight at seven thirty. Funeral Wednesday. Come.                                                     ELIZA D. McGOWN."

It was alleged that the message was sent by his sister for his benefit to enable him to attend his father's funeral, and that the charges for special delivery by messenger were guaranteed to appellant when the message was delivered to it at San Antonio, at about 9 o'clock p. m. of November 19th, and that the urgent necessity of prompt delivery was explained to the agent who received it.

The defense was a general denial, and a special plea alleging that appellant had no line of its own from San Antonio to Veal Station; that its nearest office was at Weatherford, Texas, at which place it connected with a telephone company which had a line from Weatherford to Veal Station, over which such messages could be promptly and speedily forwarded to Veal Station; that the message was received by it after its office at Weatherford was closed on the night of November 19th, so that it was impossible to forward it to Weatherford that night, but it was transmitted and received there promptly the next morning at the opening of its said office, and by it immediately delivered to its said connecting telephone line for transmission to Veal Station, that being the speediest and only means of transmission from Weatherford to Veal Station, and that the delay, if

any, occurred on the connecting line after such delivery; that the message was written on one of its regular blanks, on the back of which was printed a special contract stipulating that appellant was made the agent of the sender, without liability, to forward the message over lines of any other companies, when necessary to reach its destination; that it would not deliver messages beyond the free delivery limits of its terminal station unless extra charges were paid or guaranteed, and that Veal Station was beyond its free delivery limits at Weatherford.

Appellee replied by general denial, and specially that the contract with appellant was to transmit the message by telegraph to its station nearest to Veal Station, and thence by special messenger, and to that end the extra charge for special delivery was guaranteed to it; and that the contract printed on the back of the message referred only to connecting telegraph lines, and not telephone lines; and further, that if the legal construction of said contract authorized appellant to deliver said message to said telephone company, then the appellant was negligent in not informing the telephone company, at the time of delivering the message to it, that the special delivery charges were guaranteed by the sender.

The case was tried by a jury, who returned a verdict for $1000 against appellant, and this appeal is based upon errors assigned to the charge of the court and to the action of the court in refusing to give special charges asked, and to the verdict of the jury as unsupported by the evidence, in that the preponderance of the evidence established that appellant's contract was to transmit promptly the message to Weatherford, and there promptly deliver it to the telephone company, which it did.

The evidence establishes the delivery of the message as above set out to appellant at 9:30 o'clock p. m., November 19, 1894, at San Antonio, Texas, together with two other messages addressed to sons of the deceased, one at Austin, and the other at Jacksonville, Texas. The message to Jacksonville was marked "Special delivery charges guaranteed;" but the one to appellee was not so marked, but the words "via Weatherford" were marked on the face thereof. Floyd McGown, husband of the sender, delivered the messages to appellant's agent at San Antonio. The evidence is conflicting as to whether the extra charges for delivery from Weatherford by appellant by means of a special messenger were demanded by appellant or guaranteed by the sender; the testimony of Floyd McGown being in effect that he did not know that there was a telephone line from Weatherford to Veal Station, but that he was told by the agent that special delivery charges would be required, and he then and there guaranteed them; while that of James Dargan, the agent of appellant, to whom the message was delivered, is to the effect that he told Floyd McGown that the office of destination was not a Western Union office, and that the message would have to be sent by appellant to Weatherford, and there transferred to another company for transmission to Veal Station; that special charges were spoken of in connection with the message to Jacksonville, but nothing was said about special delivery or special delivery charges with reference to this message to appellee.

The office of appellant at Weatherford is kept open from 8 o'clock a. m. until 8 p. m., but not at night. The message was transmitted over appellant's wires from San Antonio to Weatherford at 8:30 a. m., November 20th, and there delivered at 8:40 a. m. to the agent of a telephone line which extended from Weatherford to Veal Station, a distance of about twelve or thirteen miles, continuing on to Springtown, in Parker County, a distance of about eighteen miles from Weatherford, owned by Hutchinson & Co., who solicited and accepted such business and transmitted and delivered such messages for hire, their charge for such service being 25 cents for a ten-word message.

On the back of the message was printed, among other things, the following stipulation, which was referred to in a printed provision on the face thereof, as forming part of the conditions upon which the message was accepted by appellant: "This company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination, and messages will be delivered free within the established free delivery limits of the terminal office; for delivery at a greater distance a special charge will be made to cover the cost of such delivery."

The established free delivery limits at Weatherford extended one mile from appellant's office. The appellant's regular fee for transmitting the message from San Antonio to Weatherford was 50 cents, and the telephone company's regular fee for transmitting it over its line from Weatherford to Veal Station was 25 cents. The evidence is conflicting as to the fee paid by McGown to appellant at the time the message was delivered. Appellant's witnesses testified that it charged and received for this message 75 cents, while McGown testified that on this message he paid 65 cents, and guaranteed the costs of special delivery by messenger from Weatherford.

The appellant had no line to Veal Station. This Hutchinson & Co. telephone line, as Miss Price, the lady in charge of it at Weatherford, testified, "is only eighteen miles long. It is out of order nearly all of the time. Miss Stickford had been here at Weatherford as agent and operator for the Western Union Telegraph Company for some time; I don't know how long. I suppose she was familiar with the working of the Springtown line. She very often sent messages over to me, and I sent them back because the line was out of order." In this instance, when appellant's messenger boy delivered this message to Miss Price, she told him she would get it off as soon as she could; that the line was out of order; that it was down. It had been down then for three or four days, but she did not so tell the boy. He made no reply, but went back to the Western Union office. At 2:30 o'clock p. m. of the 20th she says she again notified appellant that the telephone line was down.

The messenger boy who delivered this message to Miss Price was an employe of appellant, but upon his return to appellant's office he did not inform Miss Stickford, appellant's operator, that the telephone line was down, and she did not know it until about 2:40 o'clock that afternoon.

The notice then came to her in the form of an office message sent by the telephone company to the San Antonio office of appellant, informing appellant that its line was out of order. This message she received at 2:40 and forwarded to San Antonio at 2:45 p. m. It was received at the San Antonio office about 3:30 p. m. of the 20th. The sender was at once notified, by notice to Floyd McGown, that the appellant's wires were down, and that it could not deliver the message, and inquiring what it should do with it. He replied that the message was given it for delivery, and that all charges were guaranteed, and that he expected appellant to deliver it. On the morning of the 21st he called at appellant's office, and again urged its agents to deliver the telegram. The agent again said the wires were out of order, and they could not repeat to Veal Station. He again insisted that the telegram be delivered, and again guaranteed the charges for special delivery.

At 4:20 p. m., November 20th, appellant's Weatherford office notified its San Antonio office that the telephone line was in trouble, and that Veal Station was fourteen miles from Weatherford, and asked what disposition it should make of the message to Davis. These office messages to the San Antonio office were not answered by it until the afternoon of November 21st, when the following message was sent to the telephone company at Weatherford: "What disposition made ours John Davis, Veal Station, signed McGown? If line not O. K., deliver by special messenger. Charges guaranteed. Answer quick. San Antonio, November 21." This was received at Weatherford at 1:37 p. m., November 21st, and at once delivered to Miss Price, who says: "This was the first time the telegraph company ever instructed me to deliver that message by special messenger." She immediately placed it in the hands of a special messenger, and sent it to Veal Station, where it was delivered to appellee about 6 o'clock p. m., November 21, 1894, and after his father's funeral had occurred at San Antonio. If the message had been marked "guaranteed" at first, she would have sent it at once to Veal Station by private conveyance, but it was not so marked.

The distance from San Antonio to Weatherford is about 300 miles. From Veal Station to Fort Worth is about 25 miles by dirt road. Appellee had to go to Fort Worth to get a train to San Antonio. Upon receiving the message from the special messenger, he went to the postoffice and received therefrom a copy of the same message, which had been mailed to him by appellant from Weatherford. There was a daily mail from Weatherford to Veal Station, which left Weatherford about 1 or 2 o'clock every afternoon, and arrived at Veal Station between 4 and 5 o'clock p. m. of the same day. If the message had been delivered to him as late as 4 o'clock p. m. on November 20th, he could and would have gone by dirt road to Fort Worth, and taken a 9:20 south-bound night train, by which he would have reached San Antonio on the morning of the 21st, in ample time to have attended his father's funeral. As it was, upon receipt of the message he immediately started to Fort Worth through the country, and took a 9 o'clock morning train from there on the 22d, arriving at San

Antonio about 11 o'clock that night, but found that his father's funeral had taken place on the day before, November 21st.

The natural love and effection usually existing between father and son were present in this instance, and no complaint is made that the damages were excessive.

The material part of the court's charge was as follows:

"1.  If you find and believe from the evidence in this cause that the telegram set out in the plaintiff's petition was delivered by one McGown to the agent of the defendant at San Antonio, Texas, and if you believe that the defendant company, through its agent at San Antonio, received said message to be by the defendant delivered to the plaintiff at Veal Station, Texas, and if you believe the said McGown paid the charges to the defendant for transmitting said telegram from San Antonio to Weatherford; and if you believe the said McGown sending said message, at the time he delivered same to defendant at San Antonio, guaranteed the delivery charges, that is, the charges for sending the message to plaintiff from Weatherford to Veal Station by a special messenger; and if you believe the said McGown explained to the agent of the defendant that the message was to notify the plaintiff of his father's death so that he could attend the funeral of his father; and if you further believe from the evidence that the defendant negligently failed to deliver the same to the plaintiff at Veal Station in time for the plaintiff to reach San Antonio so as to attend the funeral of his father; and if you believe that the defendant company could by the use of reasonable diligence have transmitted and delivered the message to the plaintiff in time for the plaintiff to have attended the funeral of his father at San Antonio; and if you further believe that the plaintiff, if he had received the message in time to have permitted it, would have attended the funeral of his father; and if you believe that the plaintiff, by reason of not being able to reach San Antonio in time to attend his father's funeral, suffered damages by reason of mental anguish or suffering, you will find for the plaintiff such damages as you find him entitled to recover on account of the mental pain or anguish suffered by him, if any.

"2.  If you find and believe that at the time the said message was delivered by McGown to the defendant at San Antonio it was contemplated by the said McGown and the agent of the company at San Antonio receiving the same that said message should be transmitted to Weatherford by telegram and delivered by defendant at Weatherford to the telephone company, to be by said telephone company transmitted to plaintiff at Veal Station; and if you believe the said McGown at the time of the delivery of said message at San Antonio to the agent of defendant only paid or guaranteed the charges for transmitting the same from San Antonio by way of Weatherford to Veal Station by means of telegraph and telephone lines, that is, the charges customary for transmitting such a message from San Antonio to Weatherford by means of telegraph wire, and from Weatherford to Veal Station by means of telephone; and if you believe the defendant after receiving said message at San Antonio transmitted the same

to Weatherford by telegram, and there delivered the same to the agent of the telephone company; and if you believe the defendant in so doing used reasonable diligence, you will find for the defendant."

The second and third assignments of error are overruled, because the court's charge in the first paragraph thereof fully covered the matter complained of, in that the jury were required to believe that, at the time he delivered the message to appellant at San Antonio, McGown guaranteed the charges for sending the message to plaintiff from Weatherford to Veal Station by a special messenger, before they could find a verdict for plaintiff.

The fourth assignment of error complains of the addition of the last clause to the second paragraph of the charge, "and if you believe the defendant in so doing used reasonable diligence, you will find for the defendant," because it is insisted this clause was calculated to mislead and confuse the jury.

This second paragraph of the charge was intended to submit to the jury the issues of fact involved in appellant's defense as pleaded by it, and upon the lines of which it had introduced its evidence. It had pleaded, and its evidence tended to establish, that it was understood and agreed by and between the sender and appellant's agent at San Antonio that appellant was to promptly transmit the message over its wires from San Antonio to Weatherford, and there promptly deliver it to the telephone company for transmission and delivery to the addressee at Veal Station, and that it charged, demanded, and received only the regular fees and charges for such services, that is, 50 cents for its charge and 25 cents for the telephone company's charge, and that it performed its contract according to the terms thereof, and "used all the diligence possible to secure the delivery to plaintiff of said telegram, and that if any delay occurred to the same such delay occurred after the delivery of said telegram to said telephone company, for which under said contract defendant is not responsible."

The replication to this answer was, that if such should be the construction of the contract between the parties, then the sender did guarantee the extra charges for delivery from Weatherford by special messenger at the time the message was delivered, and that appellant was negligent in not informing the telephone company promptly of this fact, which it was its duty to do, and that by reason of its want of diligence in so doing the injury was occasioned, and it thereby became liable.

So that the real issue formed by these pleadings was, whether the defendant had used reasonable diligence in performing its part of the contract as set up in its answer and as controverted in the reply. We are therefore of opinion that it was not improper for the court to add this last clause to the charge, because, unless the appellant used reasonable diligence in the performance of its duties under the contract, and the injury was caused by the want of such diligence, it would be liable for the damages resulting therefrom.

The court's charge, we think, clearly and fairly, at least to appellant, submitted to the jury the two theories of the case presented in the pleadings of the parties respectively, and by the evidence of each, and it is clear that they believed the testimony of appellee's witnesses tending to establish his theory of the case as submitted in the first paragraph of the charge, and rejected the appellant's evidence in contradiction thereof, and as tending to prove the appellant's theory of defense as submitted in the second paragraph of the charge, and hence we overrule all assignments of error complaining of supposed errors in the charge given by the court, and those complaining of the court's refusal to give special charges asked by appellant.

· It remains now only to consider the assignments complaining of error in the verdict of the jury as being unsupported by the evidence, and against the preponderance thereof, and of the action of the court in refusing to grant a new trial by reason of such errors; and all of said assignments are predicated upon the idea that appellant had by its witnesses proved its defense as plead and made in the court below, and was therefore entitled to a verdict. The perfect answer to all this is simply that the plaintiff also proved his case by his witnesses, and the case therefore was one within the peculiar and exclusive province of the jury. The evidence was sharply conflicting. The jury were told that they were the exclusive judges of the *weight of the evidence* and of the *credibility of the witnesses;* and it has been the practice in the appellate courts of this State ever since it organized its judiciary under the Constitution of the Republic not to disturb the verdicts of juries when there is good and sufficient evidence to support them, and we are not inclined to intrench upon this rule now.

We therefore overrule all the assignments of error, and order that the judgment be in all things affirmed.

*Affirmed.*

Writ of error refused.